1  Kara L. Jassy, Bar No. 198846
   kjassy@littler.com
2  LITTLER MENDELSON P.C.
   633 West 5th Street
3  63rd Floor
   Los Angeles, California 90071
4  Telephone:  213.443.4300
   Fax No.:     213.443.4299
5
   Dominique N. Thomas, Bar No. 231464
6  dnthomas@littler.com
   LITTLER MENDELSON P.C.
7  Treat Towers
   1255 Treat Boulevard
8  Suite 600
   Walnut Creek, California 94597
9  Telephone:  925.932.2468
   Fax No.:     925.946.9809
10
   Attorneys for Defendant
11 WAL-MART ASSOCIATES, INC.

12

13                    UNITED STATES DISTRICT COURT

14                    EASTERN DISTRICT OF CALIFORNIA

15

16 HELLEN OWUOR, an individual,            Case No.

17                     Plaintiff,          **DECLARATION OF KARA L. JASSY IN**
                                           **SUPPORT OF DEFENDANT'S NOTICE**
18        v.                               **OF REMOVAL**

19 WAL-MART ASSOCIATES, INC., a Delaware
   corporation; and DOES 1-10, inclusive,
20                                         (Sacramento Superior Court Complaint Filed:
                       Defendant.          October 25, 2021)
21

22

23

24

25

26

27

28

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

                                           DECLARATION OF K. JASSY ISO
                                                    NOTICE OF REMOVAL
4855-4543-4884.1 / 080000-4224

I, Kara L. Jassy, hereby declare and state as follows:

1.      I am a shareholder in the law firm of Littler Mendelson, a Professional Corporation, counsel for Defendant WAL-MART ASSOCIATES, INC. ("Defendant") in the above-entitled matter. I am duly licensed to practice law in the State of California and before the United States District Court for the Eastern District.  Except where otherwise indicated, all of the information contained herein is based upon my personal knowledge and if called and sworn as a witness, I could and would competently testify thereto.

2.      On October 25, 2021, Plaintiff filed a Complaint (the "Complaint") in the Superior Court of the State of California for the County of Sacramento, Case No. 34-2021-00310208, entitled *HELLEN OWUOR vs. WAL-MART ASSOCIATES, INC., a Delaware Corporation and DOES 1 through 10, inclusive* (hereinafter, the "State Court Action").  The Complaint asserts eight (8) claims for relief against Defendant for: (1) gender and pregnancy discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (2) failure to accommodate in violation of FEHA; (3) failure to engage in a good faith interactive process in violation of FEHA; (4) failure to provide break time and a compliant location to express breast milk; (5) retaliation in violation of FEHA; (6) retaliation in violation of the Labor Code; (7) failure to prevent discrimination and retaliation in violation of FEHA; and (8) wrongful demotion in violation of public policy. Attached hereto as **Exhibit "A"** is a true and correct copy of the documents served on Defendant in the State Court Action which includes the Summons, Complaint, Civil Cover Sheet, Order re: Delay in Scheduling Initial Case Management Conference; and Alternative Dispute Resolution Information Package

3.      On November 3, 2021, Plaintiff served Defendant's Agent for Service of Process with the Complaint.

4.      Attached hereto as **Exhibit "B"** is a true and correct conformed copy of the Answer to Plaintiff's Complaint filed on December 3, 2021 in California Superior Court, County of Sacramento, by Defendant in this action.

5.      No other documents have been filed in the State Court Action have been filed except those included herein.

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

DECLARATION OF K. JASSY ISO
NOTICE OF REMOVAL

4855-4543-4884.1 / 080000-4224

6.     Pursuant to 28 U.S.C. § 1446(d), written notice of this Notice of Removal from State Court to Federal Court shall be filed contemporaneously with the Clerk of the Court for the California Superior Court, County of Sacramento and a copy will be served on Plaintiff's counsel of record.

I hereby declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct, and that this declaration was executed on December 3, 2021 in Los Angeles, California.


/s/ *Kara L. Jassy*
KARA L. JASSY

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

4855-4543-4884.1 / 080000-4224

DECLARATION OF K. JASSY ISO
NOTICE OF REMOVAL

EXHIBIT A

# 116646

FILED
Superior Court Of California, Sacramento
10/28/2021
Kjohnson12
By _____, Deputy
Case Number:
34-2021-00310208

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Wal-Mart Associates, Inc., a Delaware corporation; and Does 1-10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Hellen Owuor, an individual,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of California County of Sacramento, Gordon D. Schaber Courthouse 720 9th Street, Sacramento, CA 95814 | CASE NUMBER: *(Número del Caso):* |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
KING & SIEGEL LLP, 724 S. Spring Street, Suite 201, Los Angeles, CA 90014; 213-465-4802

| DATE: *(Fecha)* **OCT 2 8 2021** | Clerk, by *(Secretario)* **K. JOHNSON** | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*



**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Wal-Mart Associates, Inc., a Delaware corporation
   under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

FILED
Superior Court Of California,
Sacramento
10/25/2021
kjohnson12
By_____ , Deputy
Case Number:
34-2021-00310208

1 | Julian Burns King (Bar No. 298617)
2 | julian@kingsiegel.com
  | Margaret R. Wright (Bar No. 312272)
3 | margaret@kingsiegel.com
4 | **KING & SIEGEL LLP**
  | 724 S. Spring Street, Suite 201
5 | Los Angeles, California 90014
6 | tel: (213) 465-4802
  | fax: (213) 465-4803
7 |
  | Attorneys for Plaintiff
8 | Hellen Owuor

9 | ### SUPERIOR COURT OF THE STATE OF CALIFORNIA
10 | ### FOR THE COUNTY OF SACRAMENTO

11 |
12 | **Hellen Owuor**, an individual,
   | Plaintiff,
13 |
   | vs.
14 |
   | **Wal-Mart Associates, Inc.**, a Delaware
15 | corporation; and **Does 1-10**, inclusive,
16 | Defendants.

CASE NO.

**COMPLAINT FOR:**

1) **Gender and Pregnancy Discrimination in Violation of FEHA;**
2) **Failure to Accommodate in Violation of FEHA;**
3) **Failure to Engage in a Good Faith Interactive Process in Violation of FEHA;**
4) **Failure to Provide Break Time and a Compliant Location to Express Breast Milk;**
5) **Retaliation in Violation of FEHA;**
6) **Retaliation in Violation of the Labor Code;**
7) **Failure to Prevent Discrimination and Retaliation in Violation of FEHA;**
8) **Wrongful Demotion in Violation of Public Policy**

**Demand for Jury Trial**

BY FAX

1
COMPLAINT

1.     Plaintiff Hellen Owuor ("Plaintiff"), by and through her attorneys, complains and alleges as follows:

## PARTIES

2.     Plaintiff is an individual who at all times relevant is and was a resident of Sacramento County, California.

3.     Defendant Wal-Mart Associates, Inc. ("Defendant" or "Wal-Mart") is a Delaware corporation with a principal place of business of 702 SW 8th Street, Bentonville, Arkansas, 72716-6299. Defendant operates at 4893 Lone Tree Way, Antioch, California 94531 where Plaintiff was employed.

4.     Ms. Owuor does not currently know the names and true identities of defendants Does 1-10. Ms. Owuor reserves the right to amend this complaint to allege their true names and capacities when this information is available. Each Doe defendant is responsible for the damages alleged pursuant to each of the causes of action asserted, either through its own conduct, or vicariously through the conduct of others. All further references in this complaint to any of the named Defendants includes the fictitiously named defendants.

5.     Except as otherwise noted herein, Defendant participated in the acts alleged herein and/or were the agents, servants, employees, or representatives of the other Defendants. At all times relevant to this complaint, Defendant was acting within the course, scope, and authority of their agency and employment such that the acts of one defendant are legally attributable to the other Defendants. Defendant, in all respects, acted as employers and/or joint employers of Plaintiff in that each of them exercised control over the wages, hours, and/or working conditions employed by Defendant.

## VENUE AND JURISDICTION

6.     The court has jurisdiction over all causes of action in this complaint pursuant to Article VI, section 10 of the California Constitution. No federal question is at issue; Ms. Owuor relies solely on California statutes and law, including the Government Code and the Business & Professions Code.

7.     Venue as to Defendants is proper in this Superior Court pursuant to California

Code of Civil Procedure § 395.

## FACTUAL ALLEGATIONS

### *Ms. Owuor Is a Diligent and Loyal Employee*

8.     Ms. Owuor, a pharmacist for over 13 years, has worked for Wal-Mart since March 3, 2017 in multiple of its locations throughout northern California. Wal-Mart initially hired Ms. Owuor as a "floater" Pharmacist, whereby she covered shifts in the pharmacy departments of Wal-Mart's stores in the northern California market area. She was an exemplary employee who received glowing performance reviews and positive feedback from her supervisors.

9.     Ms. Owuor's stellar performance as a floater Pharmacist quickly led to her receiving a promotion to the Pharmacy Manager position at Wal-Mart's Stockton, California store (the "Store") on or about August 14, 2017. In this position, Ms. Owuor worked approximately 40 hours per week, earning $71.50 per hour plus overtime and significant bonuses based on performance and metrics.

10.     In or around March 2018, Ms. Owuor learned that she was pregnant, and she notified Wal-Mart shortly thereafter, requesting pregnancy leave starting in or around early December 2018.

11.     In or around November 2018, during the final term of her pregnancy, Ms. Owuor began experiencing severe back pain. She provided Wal-Mart with a doctor's note stating that she required a chair to sit on in order to alleviate her pain. Wal-Mart subsequently provided Ms. Owuor with a stool from the Store's photo lab, which was too tall for Ms. Owuor's small frame and had no back support. When Ms. Owuor asked for a smaller chair with back support, Wal-Mart informed her that it had no stools or chairs with back support in the entire Store, and that if Ms. Owuor needed one, she would have to wait until after she started her pregnancy leave for it to arrive.

12.     As a result, Ms. Owuor continued to experience severe pain, and she was forced to begin her pregnancy leave approximately one week early, in or around the end of November 2018.

## Wal-Mart Refuses to Provide Adequate Accommodations for
## Ms. Owuor to Express Breast Milk

13.     In or around May 2019, Ms. Owuor returned to work from her pregnancy leave. At that time, she was pumping breast milk for her newborn approximately every two hours, as recommended by her doctor and generally advised by medical professionals.[1] When Ms. Owuor spoke about her pumping schedule to a co-worker who had also recently given birth, the co-worker informed her that she had experienced significant difficulties in attempting to pump at the Store and stated, "*Good luck, I quit pumping.*"

14.     Because the Store did not have a dedicated lactation room, Ms. Owuor was forced to pump in a room at the back of the Store which doubled as the Assistant Managers' office and a Wi-Fi computer server room (the "Office"). Wal-Mart also used the Office to

---

[1] The Centers for Disease Control and Prevention ("CDC") recommends exclusive breast-feeding for the first six months and breastfeeding in connection with introduction of solid foods for at *least* the rest of a baby's first year. *See* Breastfeeding: Recommendations and Benefits, Centers for Disease Control and Prevention, *available at* https://www.cdc.gov/nutrition/infantandtoddlernutrition/breastfeeding/recommendations-benefits.html (last visited October 22, 2021). The World Health Organization ("WHO") recommends exclusive breastfeeding for the first six months and breastfeeding in connection with introduction of solid foods for the rest of a baby's first two years. *See* WHO, Guideline: Counselling of Women to Improve Breastfeeding Practices at 1 (2018), *available at* https://www.who.int/publications/i/item/9789241550468 (last visited October 22, 2021). Exclusive breastfeeding is recommended for at least six months by every major health organization in the United States and global community. For instance: the American Academy of Pediatrics, Breastfeeding and the Use of Human Milk, Pediatrics, Mar. 2012, *available at* https://doi.org/10.1542/peds.2011-3552 (last visited October 22, 2021); the Department of Health & Human Services Office of Women's Health, *Making the Decision to Breastfeed*, Department of Health & Human Services Office of Women's Health, *available at* https://www.womenshealth.gov/breastfeeding/making-decision-breastfeed (last visited October 22, 2021); UNICEF, *Improving breastfeeding, complementary foods and feeding practices*, *available at* https://www.unicef.org/nutrition/index_breastfeeding.html (last visited October 22, 2021); Call to Action to Support Breastfeeding, National Institute of Health, Table 2, *available at* https://www.ncbi.nlm.nih.gov/books/NBK52682/pdf/Bookshelf_NBK52682.pdf (last visited Jan. 6, 2021); and the World Health Organization, *Breastfeeding*, *available at* https://www.who.int/health-topics/breastfeeding#tab=tab_1 (last visited October 22, 2021).

3

store merchandise and shopping carts.

15.     On days when Ms. Owuor was the only Pharmacist on duty, she was permitted to close the pharmacy department for up to 15 minutes. However, pumping at the back of the Store took her approximately 20 minutes or longer, and this typically led to a long line of customers waiting for her upon her return.

16.     In or around June 2019, Ms. Owuor spoke to her supervisor, Wal-Mart's Market Director Chase Johnson, to inform him that she was pumping breast milk every two hours and to notify him of her inability to take sufficient breaks to pump when she was the only Pharmacist on duty. In response, Johnson suggested that she use the Store's immunization room, which was attached to the Pharmacy area, when she was the only Pharmacist on duty. However, Ms. Owuor could only use the immunization room in the mornings, and only on days when there were no other Pharmacists on staff performing immunizations. At all other times, Ms. Owuor had to use the Office to pump breast milk.

17.     The immunization room did not provide Ms. Owuor any privacy when she was pumping, as it had a glass door facing the pharmacy department whereby pharmacy staff could see into the room. Nor did the Office, as the Store's managers would regularly use it to complete paperwork and take meetings, and Wal-Mart's tech staff would work in the room to maintain the Wi-Fi servers and address any outage issues. The same Office was used by Muslim sales associates for their daily prayers. Moreover, the Office was unsanitary, with overflowing trash bins and ants throughout the room.

18.     The Office was always kept locked, and only the Store Manager and Assistant Managers had keys to unlock it. As a result, Ms. Owuor was forced to locate the Store's managers to ask them to unlock the Office each time she needed to pump breast milk. In addition, she was often prohibited from using the Office while managers used it to take meetings for long periods of time. Because of this, Ms. Owuor was unable to store her milk in the refrigerator, as she feared she would not be able to access it at the end of each workday. Instead, Ms. Owuor had to carry her breast milk across the Store to the pharmacy department each time she pumped so that she could store it in the pharmacy's refrigerator.

1    19.    On or about June 10, 2019, Ms. Owuor sent an email to the Store Manager,
2    Rickey Robertson, to make a complaint that she was being forced to wait for long periods of
3    time to pump breast milk in the Office. She requested that she and other lactating employees
4    be given access to a key to the Office so that they could pump without issue. She also notified
5    Robertson about the unhygienic conditions of the Office and requested that it be cleaned.

6    20.    Approximately 30 minutes later, Robertson arrived at the Store and approached
7    the pharmacy department, in the middle of a busy afternoon with several customers at the
8    pharmacy. Robertson, visibly irritated, ordered Ms. Owuor to meet him outside of the phar-
9    macy. He angrily asked her, "*why are you trying to make an issue out of no issue?*" He then
10   informed Ms. Owuor that he had cleaned the Office and walked away without addressing her
11   request for unfettered access to the Office to pump breast milk. Ms. Owuor felt humiliated,
12   intimidated, and fearful of Robertson, who essentially controlled her ability to pump breast
13   milk at the Store, and thus controlled her ability to feed her baby as she saw fit.

14   21.    Despite her fear of causing further problems with Robertson, Ms. Owuor fol-
15   lowed up with him shortly thereafter to again request access to a key to the Office. Robertson
16   outright denied her request, stating that she was not one of the Store's managers. He further
17   stated that it was Ms. Owuor's responsibility to track down the Store's managers to ensure
18   that they timely unlocked the Office each time she needed to pump throughout the day.

19   22.    Ms. Owuor subsequently complained to Michelle Rau, Wal-Mart's Store Per-
20   sonnel Associate (who handled in-store human resources needs for associates), about Wal-
21   Mart's refusal to provide her a key to the Office to pump breast milk. Rau suggested that Ms.
22   Owuor ask Robertson, to which Ms. Owuor notified Rau of her prior request and Robertson's
23   response. Rau responded by stating that she understood why Ms. Owuor was intimidated by
24   Robertson and afraid to approach him about the issue again.

25   23.    However, Wal-Mart took no steps to address Ms. Owuor's complaint or ensure
26   that she had unfettered access to a private room. Because Ms. Owuor was unable to regularly
27   pump breast milk at work, approximately three weeks after she returned, her breast milk supply
28   began to diminish. She was forced to begin waking up in the middle of the night and in the early

hours of the morning to pump in order to ensure that she did not lose her breast milk supply completely. This caused Ms. Owuor to experience significant stress, anxiety, and a lack of sleep, which in turn affected her work performance.

24. Moreover, during the first month after her return to work, Wal-Mart's managers walked in on Ms. Owuor pumping in the Office approximately every other day. Because the Office faced the employee break room, Ms. Owuor was visible to all employees on break each time this occurred.

25. Ms. Owuor informed Wal-Mart of the issue and was given a pink poster that read, "Room in Use," which she would post on the door each time she used the Office to pump. However, Wal-Mart's managers ignored the "Room in Use" sign and continued to walk into the Office unannounced. On one occasion, Ms. Owuor was pumping in the Office when an Assistant Manager, accompanied by an interviewee, swung open the door. Ms. Owuor was so humiliated and upset by the Assistant Manager's callous disregard for her privacy that she immediately stopped pumping and left the Office in tears.

26. On other occasions, Wal-Mart's managers would approach the door to the Office while Ms. Owuor was pumping and loudly exclaim, "*We are opening, are you NAKED?*" and "*I hope you're not NAKED!*" within earshot of the employees using the break room. This insensitive treatment further humiliated Ms. Owuor and caused her a great deal of stress.

27. Moreover, in or around July 2019, another Wal-Mart employee—who was also regularly attempting to use the Office to pump breast milk and experiencing the same issues— notified Ms. Owuor that she had discovered a surveillance camera in the Office.

28. On or about July 3, 2019, Ms. Owuor sent an email to Johnson about the managers' refusal to respect her privacy when she was pumping, and about the newly-discovered surveillance camera in the Office. The surveillance camera was subsequently removed, and Ms. Owuor was provided a latch on the Office door so that she could lock the Office from the inside. The latch prevented the Store's managers from walking in on Ms. Owuor while she was pumping; however, she would be startled each time the managers would hit the latch when aggressively attempting to open the door.

*Ms. Owuor Is Written Up for Alleged Performance Issues Directly Resulting from Wal-Mart's Refusal to Adequately Accommodate Her*

29. In or around September or October 2019, the Store grew busier in preparation for "Black Friday," and Ms. Owuor was forced to wait for even longer periods of time to use the Office to pump breast milk while the managers took meetings and completed other tasks. In order to avoid having to wait for such long periods of time, Ms. Owuor began paging the managers well in advance to ask that the Office be unlocked for her. However, the managers routinely failed to timely do so, forcing Ms. Owuor to wait outside of the Office for up to 20 or 30 minutes until a manager arrived.

30. Ms. Owuor soon began experiencing significant difficulty completing her work deadlines due to the obstacles Wal-Mart imposed on her when she attempted to pump breast milk. This caused her to suffer a considerable amount of stress, and she began losing additional sleep at night due to constant worrying about her job. She asked Johnson for help, explaining the issues she was experiencing and requesting that Wal-Mart permit her to work longer hours so that she could meet her deadlines. However, Johnson denied her request. As a result, Ms. Owuor—who feared being written up for working too many overtime hours—was forced to work off the clock in order to meet her deadlines.

31. On or about October 2, 2019, Ms. Owuor was written up for working off the clock and failing to "manage workflow." In a meeting with Johnson and Wal-Mart's Human Resources personnel, Ms. Owuor explained the issues she continued to experience when attempting to pump at work, the impact those issues were having on her ability to meet deadlines, and Johnson's refusal to permit her to work longer hours. She also complained that she felt Wal-Mart had been discriminating against her since she returned from her pregnancy leave.

32. Following this write up, Ms. Owuor did not work off the clock again. As a result, she did not meet her deadlines, and she was written up again on or about October 15, 2019. Ms. Owuor spoke with Johnson, again explaining to him that she was experiencing significant issues in pumping at work, and asking Johnson for help. However, Johnson refused to provide her any accommodations to address these issues.

33. In or around November 2019, the Store's managers began to store additional merchandise in the Office, making it more crowded and nearly impossible for Ms. Owuor to pump breast milk. At one point, Ms. Owuor tripped over a bicycle when trying to locate a seat to pump.

34. On or about November 20, 2019, Ms. Owuor paged the Assistant Manager on duty, Alicia, asking that she be given access to the Office to pump. When Ms. Owuor arrived at the Office several minutes later, the door was locked, and she was forced to wait 20 minutes for another manager to open the door. When Ms. Owuor was finally given access to the Office, she saw that Alicia—who had clearly ignored her request—had been sitting inside the Office with the door locked. Alicia loudly sighed in annoyance before exiting the Office.

35. In or around early 2020, Ms. Owuor paged the Store's managers four different times in the morning asking that the Office be unlocked so that she could pump breast milk, but she was ignored each time. During her lunch break, Ms. Owuor paged her managers again, but she was again ignored and not provided access to the Office. Later that afternoon, she approached an Assistant Manager, Angelina, asking that the Office be unlocked so that she could pump breast milk. Angelina responded that she would unlock the Office in a few minutes and walked away. However, neither Angelina nor any other managers gave Ms. Owuor access to the Office and, unable to pump, she worked in pain all afternoon. When she arrived home that evening, her breasts were engorged.

36. On or about January 15, 2020, Ms. Owuor received a final written warning for working too many overtime hours. She again expressed to Johnson that she needed help, and that she could not keep up with her deadlines without working overtime hours because of the impediments Wal-Mart was imposing on her ability to pump breast milk. Under threat of termination, Ms. Owuor asked Johnson if she could take another position in the pharmacy department to accommodate her need to regularly pump breast milk and to address the significant stress that Wal-Mart was causing her. However, Johnson informed her that this was "***not something we usually do in the company***," stating that she would instead be placed on a "coaching plan."

*Ms. Owuor Is Demoted from Her Pharmacy Manager Position*

37.     In or around February 2020, Johnson was replaced with a new Market Director, Mohammed Khan. Khan reviewed the "coaching plan" implemented by Johnson, and stated to Ms. Owuor that the plan and time frame therein unrealistic and unachievable. He then asked Ms. Owuor, "*what really happened?*" noting that she had no prior disciplinary actions until October 2019, when she suddenly began receiving multiple write ups. Ms. Owuor explained her continued issues pumping breast milk at work and her fear that she would be terminated as a result. Khan replied, "*they will fire you*," and stated that he was certain the unrealistic "coaching plan" would not work given Ms. Owuor's issues pumping breast milk at work.

38.     In or around March 2020, Khan suggested that Ms. Owuor be demoted to a floater Pharmacist position at a Wal-Mart store located close to her home. Ms. Owuor—believing that this was the only way to save her job—informed Khan that she would be open to this position. Khan directed her to send him an email requesting the demotion, and she was subsequently demoted from her Pharmacy Manager position. She was told that as a floater Pharmacist, she would be earning $4.00 less per hour than she earned in her Pharmacy Manager position, with a substantially decreased bonus potential, and that she would be working only 30 to 40 hours per week. She was not informed of any other changes to her pay or benefits.

39.     In or around February 2021, Ms. Owuor noticed that Wal-Mart's system recorded her as having zero hours of paid time off ("PTO"). This was unusual, because Wal-Mart routinely provided all pharmacists 80 hours of PTO upfront on the first day of February each year, with an additional pay period accrual rate of up to a maximum of 168 hours for the year. Ms. Owuor brought the issue to Wal-Mart's attention and was initially told that it was due to a "code error." She then escalated the issue to Wal-Mart's Human Resources Manager, who informed her that Wal-Mart had applied a new PTO policy to Ms. Owuor when she was demoted from the Pharmacy Manager position, without informing her of this change.

40.     This new PTO policy apparently applied to Ms. Owuor only: other staff and floater pharmacists notified her that they had received their 80 hours of upfront PTO that year; and two other Pharmacy Managers who had stepped down to floater positions informed Ms.

Owuor that they had experienced the same issue, but that Wal-Mart's Human Resources department had immediately resolved the issue and granted them 80 hours of PTO.

41.     As a result, Ms. Owuor was forced to cancel almost all of her formerly approved PTO days for the entire year. She has consequently missed a planned spring break vacation with her children, days off for family birthdays, and visits with her elderly parents. Moreover, because Ms. Owuor was not scheduled to work on her approved PTO days, she has been forced to ask her colleagues to take off so that she can cover their shifts, in order to avoid facing disciplinary action for not working on her formerly approved PTO days. She has also been required to use her sick time on days that she is unable to cover pharmacy shifts.

42.     As a direct and proximate cause of Defendants' actions, Ms. Owuor has suffered and continues to suffer substantial losses in earnings, future earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer the indignation of unlawful discrimination, the loss of her right to full and equal employment opportunities, as well as extreme emotional distress, mental anguish, frustration, anxiety, embarrassment among her friends and colleagues, and disruption of her personal life during a time when she was vulnerable.

43.     Accordingly, Ms. Owuor brings this action seeking compensatory damages, punitive damages, attorneys' fees and costs, and other remedies as set forth below in amounts subject to proof at trial.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

44.     Ms. Owuor has exhausted all administrative remedies required as a prerequisite to bringing this action. On October 21, 2021, Ms. Owuor filed a complaint of discrimination against Defendants with the Department of Fair Employment and Housing ("DFEH") and obtained a right-to-sue letter, attached as **Exhibit A**, authorizing her to enforce her rights through a civil action.

/ / /

/ / /

/ / /

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Gender and Pregnancy Discrimination in Violation of FEHA

### Gov. Code §§ 12940, et seq.

### (Plaintiff Against Defendants)

45.     Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

46.     The California Fair Employment and Housing Act provides that it is unlawful for "an employer, because of the . . . sex . . . of any person, to . . . discharge the person from employment, . . . or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Gov. Code §§ 12940(a). "Sex" is defined to include pregnancy, childbirth, breastfeeding, and related medical conditions. Gov. Code § 12926(r)(1).

47.     Ms. Owuor was a pregnant woman due to give birth in or around January 2020. Accordingly, she was protected from discrimination based on pregnancy, childbirth, and re-lated medical conditions.

48.     Defendants discriminated against Ms. Owuor because of her sex and her preg-nancy in violation of Government Code § 12940(a) by denying her professional opportunities, interfering with her leave, failing to provide accommodations, and wrongfully demoting her.

49.     Ms. Owuor's sex and pregnancy were the sole or motivating factors in Defend-ants' decision to take these or other adverse employment actions against her.

50.     As a direct and proximate result of Defendants' conduct, Ms. Owuor has suf-fered special damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount subject to proof at trial. As further direct and proximate result of Defendants' con-duct, Ms. Owuor continues to suffer damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount to be proven at trial.

51.     Defendants' conduct has further caused Ms. Owuor to lose financial stability, peace of mind, and future security. Defendants' conduct has caused her severe embarrass-ment, humiliation, and mental and emotional distress and discomfort in an amount not fully

1 ascertained but subject to proof at trial.

2     52.     Because of the conduct alleged herein, Ms. Owuor hired attorneys to prosecute

3 her claims under the FEHA. Accordingly, Ms. Owuor is entitled to recover attorneys' fees and

4 costs pursuant to Government Code § 12965(b), in addition to other damages as provided by

5 law.

6     53.     Moreover, Defendants' conduct has been intentional, deliberate, willful, mali-

7 cious, reckless, and conducted in callous disregard for Ms. Owuor' rights, entitling her to pu-

8 nitive damages.

9                    **SECOND CAUSE OF ACTION**

10             **Failure to Accommodate in Violation of FEHA**

11                    **Gov. Code §§ 12940, et seq.**

12                    **(Plaintiff Against Defendants)**

13     54.     Plaintiff repeats and incorporates by reference all allegations contained in the

14 preceding paragraphs as if fully set forth herein.

15     55.     Defendant is an employer in the State of California, within the meaning of the

16 FEHA, Gov't Code § 12926.

17     56.     At all relevant times herein, Ms. Owuor was an employee of Defendant within

18 the meaning of Gov't Code § 12926, and at all times during her employment she performed

19 her essential job duties in a competent, satisfactory manner.

20     57.     Ms. Owuor was able to perform the essential duties of her position or a vacant

21 alternative position to which she could have been assigned with a reasonable accommodation

22 for her pregnancy.

23     58.     Defendant failed to provide Ms. Owuor with a reasonable accommodation for

24 her pregnancy.

25     59.     Ms. Owuor is informed and believes, and based thereon alleges, that the reason-

26 able accommodation sought would not have created an undue hardship for Defendant.

27     60.     As a direct and proximate result of the violation of her rights under the FEHA,

28 Ms. Owuor has suffered and will continue to suffer general damages in amounts to be proven

                                    12

1 | at trial. Defendants' conduct was a substantial factor in causing those damages.

2 | 61. As a direct and proximate result of Defendants' violation of her rights under the

3 | FEHA, Ms. Owuor has suffered and will continue to suffer financial losses, including a loss of

4 | earnings and other employment benefits and job opportunities. Ms. Owuor is thereby entitled

5 | to special damages in amounts to be proven at trial. Defendants' conduct was a substantial

6 | factor in causing those damages.

7 | 62. As a further, direct and proximate result of Defendants' violation of Gov't Code

8 | § 12900 et seq., as heretofore described, Ms. Owuor has been compelled to retain the services

9 | of counsel in an effort to enforce the terms and conditions of her employment relationship with

10 | Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full

11 | nature and extent of which are presently unknown to her. Ms. Owuor therefore requests that

12 | attorneys' fees be awarded pursuant to Gov't Code § 12965.

13 | 63. Ms. Owuor is informed and believes and based thereon alleges that the outra-

14 | geous conduct of Defendant described above was done with malice, fraud, and oppression and

15 | with conscious disregard for her rights and with the intent, design, and purpose of injuring her.

16 | By reasons thereof, Ms. Owuor is entitled to punitive or exemplary damages from Defendant

17 | in a sum according to proof at trial.

### THIRD CAUSE OF ACTION

**Failure to Engage in a Good Faith Interactive Process in Violation of FEHA**

**Gov. Code §§ 12940, et seq.**

**(Plaintiff Against Defendants)**

22 | 64. Government Code § 12940(n) requires employers to engage in a good faith in-

23 | teractive process with employees with pregnancy-related medical conditions to allow the em-

24 | ployer and employee to determine reasonable and effective accommodations. Gov. Code

25 | § 12940(n). An employer's failure to engage in a good faith interactive process upon learning

26 | of an employee's disability constitutes an independent violation of FEHA. 2 C.C.R.

27 | § 11040(a)(2)(B).

28 | 65. Ms. Owuor had a medical condition and disability within the meaning of FEHA

relating to her status as a lactating mother. Defendants were required to engage in a good faith interactive process with Ms. Owuor. When Ms. Owuor made clear that she needed a legally-compliant, private, clean space, other than the Assistant Managers' Office to express breast-milk, Defendants failed to engage in the good faith interactive process.

66. As a direct and proximate result of the violation of her rights under the FEHA, Ms. Owuor has suffered and will continue to suffer general damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

67. As a direct and proximate result of Defendants' violation of her rights under the FEHA, Ms. Owuor has suffered and will continue to suffer financial losses, including a loss of earnings and other employment benefits and job opportunities. Ms. Owuor is thereby entitled to special damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

68. As a further, direct and proximate result of Defendants' violation of Gov't Code § 12900 et seq., as heretofore described, Ms. Owuor has been compelled to retain the services of counsel in an effort to enforce the terms and conditions of her employment relationship with Defendants, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to her. Ms. Owuor therefore requests that attorneys' fees be awarded pursuant to Gov't Code § 12965.

69. Ms. Owuor is informed and believes and based thereon alleges that the outra-geous conduct of Defendants described above was done with malice, fraud, and oppression and with conscious disregard for her rights and with the intent, design, and purpose of injuring her. By reasons thereof, Ms. Owuor is entitled to punitive or exemplary damages from Defendant in a sum according to proof at trial.

## FOURTH CAUSE OF ACTION

### Failure to Provide Break Time and a Compliant Location to Express Breast Milk

### Cal. Lab. Code §§ 1030, et seq.

### (Plaintiff Against Defendants)

70. Plaintiff repeats and incorporates by reference all allegations contained in the

14

preceding paragraphs as if fully set forth herein.

71.     Labor Code § 1030 provides that "[e]very employer . . . shall provide a reason-able amount of break time to accommodate an employee desiring to express breast milk for the employee's infant child each time the employee has need to express milk." Labor Code § 1033 further provides that an employer shall provide the use of a room or other location for the employee to express milk in private. This location must be in "close proximity to the em-ployee's work area, shielded from view, and free from intrusion while the employee is express-ing milk." The location must be "safe, clean, and free of hazardous materials," "[c]ontain a surface to place a breast pump and personal items," "[h]ave access to electricity or alternative devices, including but not limited to, extension cords or charging stations, needed to operate an electric or battery-powered breast pump," and "access to a sink with running water and a refrigerator suitable for storing milk in close proximity to the employee's workspace." Lab. Code § 1033.

72.     Defendants denied Ms. Owuor needed breaks to express milk.

73.     Defendants further denied Ms. Owuor access to compliant locations, other than the Assistant Managers' Office, to express milk in private.

74.     Ms. Owuor seeks unpaid wages in the amount of one hour's pay for each time she was not provided with lactation breaks or a compliant location to express milk.

75.     Ms. Owuor further seeks to recover attorneys' fees and costs, in addition to other damages as provided by law.

## FIFTH CAUSE OF ACTION

### Retaliation in Violation of FEHA

### Gov. Code §§ 12940, et seq.

### (Plaintiff Against Defendants)

76.     Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

77.     The FEHA prohibits retaliation against an employee who requests accommoda-tions for a mental of physical disability, regardless of whether the accommodation was granted.

15

Gov. Code § 12940(m). "Sex" is expressly defined to include breastfeeding, pregnancy, child-birth, or a related medical condition. Gov. Code § 12926(r).

78.     Ms. Owuor had a medical condition within the meaning of the FEHA relating to her status as a lactating mother. Plaintiff requested accommodation for her lactation needs and made clear that she needed a legally compliant, private, clean space, other than the Assistant Managers' Office, to express milk. In response, Defendants retaliated against Ms. Owuor by repeatedly disciplining her and by forcing her to accept a demotion from her Pharmacy Manager position out of fear that she would lose her job.

79.     As a direct and proximate result of the violation of her rights under the FEHA, Ms. Owuor has suffered and will continue to suffer general damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

80.     As a direct and proximate result of Defendants' violation of her rights under the FEHA, Ms. Owuor has suffered and will continue to suffer financial losses, including a loss of earnings and other employment benefits and job opportunities. Ms. Owuor is thereby entitled to special damages in amounts to be proven at trial. Defendants' conduct was a substantial factor in causing those damages.

81.     Defendants' conduct has further caused Ms. Owuor to lose financial stability, peace of mind, and future security. Defendants' conduct has caused her severe embarrass-ment, humiliation, and mental and emotional distress and discomfort in an amount not fully ascertained but subject to proof at trial.

82.     Because of the conduct alleged herein, Ms. Owuor hired attorneys to prosecute her claims under the FEHA. Accordingly, Ms. Owuor is entitled to recover attorneys' fees and costs pursuant to Government Code § 12965(b), in addition to other damages as provided by law.

83.     Moreover, Defendants' conduct has been intentional, deliberate, willful, mali-cious, reckless, and conducted in callous disregard for Plaintiff's rights, entitling her to puni-tive damages.

# SIXTH CAUSE OF ACTION

## Retaliation in Violation of the Labor Code

### Gov. Code §§ 12940, et seq.

### (Plaintiff Against Defendants)

84.     Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

85.     Labor Code § 1102.5 provides that an employer, or anyone acting on their behalf, shall not retaliate against an employee for disclosing information that the employee has reasonable cause to believe constitutes a violation of law.

86.     Ms. Owuor repeatedly complained to Defendants about violations of Labor Code § 1030, *et seq.* and Defendants' failure to accommodate her as a lactating mother. Ms. Owuor was subsequently disciplined repeatedly and forced to accept a demotion from her Pharmacy Manager position because she complained about these violations of law.

87.     As a proximate result of Defendants' conduct, Ms. Owuor has suffered special damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount subject to proof at trial. As further direct and proximate result of Defendants' conduct, Ms. Owuor continues to suffer damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount to be proven at trial.

88.     Defendants' conduct has further caused Ms. Owuor to lose financial stability, peace of mind, and future security, and has caused her severe embarrassment, humiliation, and mental and emotional distress and discomfort in an amount not fully ascertained by subject to proof at trial.

89.     Moreover, Defendant's conduct has been intentional, deliberate, willful, malicious, reckless, and/or conducted in callous disregard for Plaintiff's rights, entitling her to punitive damages.

90.     Plaintiff further seeks backpay, the value of lost benefits, reasonable attorney's fees, and a civil penalty as authorized by statute.

## SEVENTH CAUSE OF ACTION

### Failure to Prevent Discrimination and Retaliation in Violation of FEHA

### Gov. Code §§ 12940, et seq.

### (Plaintiff Against Defendants)

91. Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

92. California law requires employers to take all reasonable steps necessary to prevent discrimination in violation of FEHA.

93. Defendants failed to take all reasonable steps necessary to prevent gender and pregnancy discrimination and retaliation under the FEHA and the Labor Code. At all relevant times, Defendants had actual and constructive knowledge of the discriminatory and retaliatory conduct described and alleged in this complaint, and condoned, ratified, and participated in that conduct.

94. As a direct and proximate result Defendants' conduct, Ms. Owuor has suffered special damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount subject to proof at trial. As further direct and proximate result of Defendants' conduct, Ms. Owuor continues to suffer damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount to be proven at trial.

95. Defendants' conduct has further caused Ms. Owuor to lose financial stability, peace of mind, and future security. Defendants' conduct has caused her severe embarrassment, humiliation, and mental and emotional distress and discomfort in an amount not fully ascertained but subject to proof at trial.

96. Because of the conduct alleged herein, Ms. Owuor hired attorneys to prosecute her claims under FEHA. Accordingly, Ms. Owuor is entitled to recover attorneys' fees and costs pursuant to Government Code § 12965(b), in addition to other damages as provided by law.

97. Moreover, Defendants' conduct has been intentional, deliberate, willful, mali-

cious, reckless, and conducted in callous disregard for Ms. Owuor' rights, entitling her to punitive damages.

## EIGHTH CAUSE OF ACTION

### Wrongful Demotion in Violation of Public Policy

### (Plaintiff Against Defendants)

98. Plaintiff repeats and incorporates by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

99. It is against public policy in California to discriminate in the terms and conditions of employment based on pregnancy, gender, disability, sex, and race. See, e.g., Cal. Const., Art. 1, § 8. It is further illegal to retaliate against employees for taking, or intending to take, job-protected leave.

100. Defendants discriminated against Ms. Owuor on the basis of her gender and pregnancy. Defendants also retaliated against Ms. Owuor for requesting reasonable accommodations and for making complaints about Defendants' violations of the Labor Code.

101. This discriminatory and retaliatory conduct constitutes an unlawful employment practice in violation of California's well-established public policy.

102. As a direct and proximate result Defendants' conduct, Ms. Owuor has suffered special damages in the form of lost earnings, benefits, and/or out-of-pocket expenses in an amount subject to proof at trial. As further direct and proximate result of Defendants' conduct, Ms. Owuor continues to suffer damages in the form of lost future earnings, benefits, and/or other prospective damages in an amount to be proven at trial.

103. Defendants' conduct has further caused Ms. Owuor to lose financial stability, peace of mind, and future security. Defendants' conduct has caused her severe embarrassment, humiliation, and mental and emotional distress and discomfort in an amount not fully ascertained but subject to proof at trial.

104. Moreover, Defendants' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard for Ms. Owuor' rights, entitling her to punitive damages.

## DEMAND FOR JURY TRIAL

Pursuant to California Code of Civil Procedure § 631, Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays judgment as follows:

A.   For actual and liquidated damages according to proof at trial;

B.   For statutory and civil penalties and special damages, according to proof at trial;

C.   For punitive and exemplary damages according to proof;

D.   For pre- and post-judgment interest on monetary damages;

E.   For reasonable attorney's fees and costs and expert fees and costs as allowed by law; and

F.   For such other relief as this Court deems just and proper.

Dated:      October 22, 2021

Respectfully submitted,

**KING & SIEGEL LLP**

By: *Margaret R. Wright*
Julian Burns King
Margaret R. Wright
Attorneys for Plaintiff

# Exhibit A



October 21, 2021

Elliot Siegel
724 South Spring Street, Ste. 201
Los Angeles, CA 90014
Margaret Wright
724 S Spring St., Suite 201
Los Angeles, California 90014

RE:  **Notice to Complainant's Attorney**
DFEH Matter Number: 202110-15156421
Right to Sue: Owuor / Wal-Mart Associates, Inc.

Dear Elliot SiegelMargaret Wright:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing




**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

October 21, 2021

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 202110-15156421
Right to Sue: Owuor / Wal-Mart Associates, Inc.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be made within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete. To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing

DFEH-ENF 80 RS



**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

October 21, 2021

Hellen Owuor

,

RE:  **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 202110-15156421
Right to Sue: Owuor / Wal-Mart Associates, Inc.

Dear Hellen Owuor:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective October 21, 2021 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be submitted to the DFEH within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete.  To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Hellen Owuor

DFEH No. 202110-15156421

Complainant,

vs.

Wal-Mart Associates, Inc.
702 SW 8th Street
Bentonville, Arkansas 72716-6299

Respondents

─────────────────────────────────

1. Respondent **Wal-Mart Associates, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Hellen Owuor**, resides in the City of , State of .

3. Complainant alleges that on or about **October 21, 2021**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's sex/gender, disability (physical or mental), pregnancy, childbirth, breast feeding, and/or related medical conditions and as a result of the discrimination was reprimanded, demoted, denied any employment benefit or privilege, denied accommodation for pregnancy, denied or forced to transfer.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a pregnancy-disability-related accommodation and as a result was reprimanded, demoted, denied any employment benefit or privilege, denied accommodation for pregnancy, denied or forced to transfer.

**Additional Complaint Details:** Ms. Owuor, a pharmacist for over 13 years, has worked for Wal-Mart since March 3, 2017 in multiple of its locations throughout northern California. Wal-Mart initially hired Ms. Owuor as a "floater" Pharmacist, whereby she covered shifts in the

-1-

Date Filed: October 21, 2021

DFEH-ENF 80 RS

pharmacy departments of Wal-Mart's stores in the northern California market area. She was an exemplary employee who received glowing performance reviews and positive feedback from her supervisors.

Ms. Owuor's stellar performance as a floater Pharmacist quickly led to her receiving a promotion to the Pharmacy Manager position at Wal-Mart's Stockton, California store (the "Store") on or about August 14, 2017. In this position, Ms. Owuor worked approximately 40 hours per week, earning $71.50 per hour plus overtime and significant bonuses based on performance and metrics.

In or around March 2018, Ms. Owuor learned that she was pregnant, and she notified Wal-Mart shortly thereafter, requesting pregnancy leave starting in or around early December 2018.

In or around November 2018, during the final term of her pregnancy, Ms. Owuor began experiencing severe back pain. She provided Wal-Mart with a doctor's note stating that she required a chair to sit on in order to alleviate her pain. Wal-Mart subsequently pro-vided Ms. Owuor with a stool from the Store's photo lab, which was too tall for Ms. Owuor's small frame and had no back support. When Ms. Owuor asked for a smaller chair with back support, Wal-Mart informed her that it had no stools or chairs with back support in the entire Store, and that if Ms. Owuor needed one, she would have to wait until after she started her pregnancy leave for it to arrive.

As a result, Ms. Owuor continued to experience severe pain, and she was forced to begin her pregnancy leave approximately one week early, in or around the end of November 2018.

**Wal-Mart Refuses to Provide Adequate Accommodations for Ms. Owuor to Express Breast Milk**

In or around May 2019, Ms. Owuor returned to work from her pregnancy leave. At that time, she was pumping breast milk for her newborn approximately every two hours, as recommended by her doctor and generally advised by medical professionals.  When Ms. Owuor spoke about her pumping schedule to a co-worker who had also recently given birth, the co-worker informed her that she had experienced significant difficulties in attempting to pump at the Store and stated, "Good luck, I quit pumping."

Because the Store did not have a dedicated lactation room, Ms. Owuor was forced to pump in a room at the back of the Store which doubled as the Assistant Managers' office and a Wi-Fi computer server room (the "Office"). Wal-Mart also used the Office to store merchandise and shopping carts.

On days when Ms. Owuor was the only Pharmacist on duty, she was permitted to close the pharmacy department for up to 15 minutes. However, pumping at the back of the Store took her approximately 20 minutes or longer, and this typically led to a long line of customers waiting for her upon her return.

In or around June 2019, Ms. Owuor spoke to her supervisor, Wal-Mart's Market Director Chase Johnson, to inform him that she was pumping breast milk every two hours and to notify him of her inability to take sufficient breaks to pump when she was the only Pharmacist on duty. In response, Johnson suggested that she use the Store's immunization room, which was attached to the Pharmacy area, when she was the only Pharmacist on duty. However, Ms. Owuor could only use the immunization room in the mornings, and only on days when there were no other Pharmacists on staff performing immunizations. At all other times, Ms. Owuor had to use the Office to pump breast milk.

-2-

Date Filed: October 21, 2021

DFEH-ENF 80 RS

1  The immunization room did not provide Ms. Owuor any privacy when she was pumping, as it
   had a glass door facing the pharmacy department whereby pharmacy staff could see into
2  the room. Nor did the Office, as the Store's managers would regularly use it to complete
   paperwork and take meetings, and Wal-Mart's tech staff would work in the room to maintain
3  the Wi-Fi servers and address any outage issues. The same Office was used by Muslim
   sales associates for their daily prayers. Moreover, the Office was unsanitary, with
4  overflowing trash bins and ants throughout the room.

5  The Office was always kept locked, and only the Store Manager and Assistant Managers
   had keys to unlock it. As a result, Ms. Owuor was forced to locate the Store's man-agers to
6  ask them to unlock the Office each time she needed to pump breast milk. In addition, she
   was often prohibited from using the Office while managers used it to take meetings for long
7  periods of time. Because of this, Ms. Owuor was unable to store her milk in the refrigerator,
   as she feared she would not be able to access it at the end of each workday. Instead, Ms.
8  Owuor had to carry her breast milk across the Store to the pharmacy department each time
   she pumped so that she could store it in the pharmacy's refrigerator.

9  On or about June 10, 2019, Ms. Owuor sent an email to the Store Manager, Rickey
   Robertson, to make a complaint that she was being forced to wait for long periods of time to
10 pump breast milk in the Office. She requested that she and other lactating employees be
   given access to a key to the Office so that they could pump without issue. She also notified
11 Robertson about the unhygienic conditions of the Office and requested that it be cleaned.
   Approximately 30 minutes later, Robertson arrived at the Store and approached the
12 pharmacy department, in the middle of a busy afternoon with several customers at the
   pharmacy. Robertson, visibly irritated, ordered Ms. Owuor to meet him outside of the
13 pharma-cy. He angrily asked her, "why are you trying to make an issue out of no issue?" He
   then in-formed Ms. Owuor that he had cleaned the Office and walked away without
14 addressing her request for unfettered access to the Office to pump breast milk. Ms. Owuor
   felt humiliated, intimidated, and fearful of Robertson, who essentially controlled her ability to
15 pump breast milk at the Store, and thus controlled her ability to feed her baby as she saw fit.

16 Despite her fear of causing further problems with Robertson, Ms. Owuor followed up with
   him shortly thereafter to again request access to a key to the Office. Robertson outright
17 denied her request, stating that she was not one of the Store's managers. He further stated
   that it was Ms. Owuor's responsibility to track down the Store's managers to ensure that
18 they timely unlocked the Office each time she needed to pump throughout the day.

19 Ms. Owuor subsequently complained to Michelle Rau, Wal-Mart's Store Personnel
   Associate (who handled in-store human resources needs for associates), about Wal-Mart's
20 refusal to provide her a key to the Office to pump breast milk. Rau suggested that Ms.
   Owuor ask Robertson, to which Ms. Owuor notified Rau of her prior request and Robertson's
21 response. Rau responded by stating that she understood why Ms. Owuor was intimidated by
   Robertson and afraid to approach him about the issue again.

22 However, Wal-Mart took no steps to address Ms. Owuor's complaint or ensure that she had
   unfettered access to a private room. Because Ms. Owuor was unable to regularly pump
23 breast milk at work, approximately three weeks after she returned, her breast milk sup-ply
   began to diminish. She was forced to begin waking up in the middle of the night and in the
24 early hours of the morning to pump in order to ensure that she did not lose her breast milk
   supply completely. This caused Ms. Owuor to experience significant stress, anxiety, and a
25 lack of sleep, which in turn affected her work performance.

26
                                          -3-
                              Complaint – DFEH No. 202110-15156421
27
   Date Filed: October 21, 2021
28

                                                                           DFEH-ENF 80 RS

1. Moreover, during the first month after her return to work, Wal-Mart's managers walked in on Ms. Owuor pumping in the Office approximately every other day. Because the Office faced
2. the employee break room, Ms. Owuor was visible to all employees on break each time this occurred.
3. Ms. Owuor informed Wal-Mart of the issue and was given a pink poster that read, "Room in Use," which she would post on the door each time she used the Office to pump. However,
4. Wal-Mart's managers ignored the "Room in Use" sign and continued to walk into the Office unannounced. On one occasion, Ms. Owuor was pumping in the Office when an Assistant
5. Manager, accompanied by an interviewee, swung open the door. Ms. Owuor was so humiliated and upset by the Assistant Manager's callous disregard for her privacy that she
6. immediately stopped pumping and left the Office in tears.
7. On other occasions, Wal-Mart's managers would approach the door to the Office while Ms. Owuor was pumping and loudly exclaim, "We are opening, are you NAKED?" and "I hope
8. you're not NAKED!" within earshot of the employees using the break room. This insensitive treatment further humiliated Ms. Owuor and caused her a great deal of stress.
9. Moreover, in or around July 2019, another Wal-Mart employee—who was also regularly attempting to use the Office to pump breast milk and experiencing the same issues—notified
10. Ms. Owuor that she had discovered a surveillance camera in the Office.
11. On or about July 3, 2019, Ms. Owuor sent an email to Johnson about the managers' refusal to respect her privacy when she was pumping, and about the newly-discovered surveillance
12. camera in the Office. The surveillance camera was subsequently removed, and Ms. Owuor was provided a latch on the Office door so that she could lock the Office from the inside.
13. The latch prevented the Store's managers from walking in on Ms. Owuor while she was pumping; however, she would be startled each time the managers would hit the latch when
14. aggressively attempting to open the door.
   Ms. Owuor Is Written Up for Alleged Performance Issues Directly Resulting from Wal-Mart's
15. Refusal to Adequately Accommodate Her
   In or around September or October 2019, the Store grew busier in preparation for "Black
16. Friday," and Ms. Owuor was forced to wait for even longer periods of time to use the Office to pump breast milk while the managers took meetings and completed other tasks. In order
17. to avoid having to wait for such long periods of time, Ms. Owuor began paging the managers well in advance to ask that the Office be unlocked for her. However, the managers routinely
18. failed to timely do so, forcing Ms. Owuor to wait outside of the Office for up to 20 or 30 minutes until a manager arrived.
19. Ms. Owuor soon began experiencing significant difficulty completing her work deadlines due to the obstacles Wal-Mart imposed on her when she attempted to pump breast milk. This
20. caused her to suffer a considerable amount of stress, and she began losing additional sleep at night due to constant worrying about her job. She asked Johnson for help, explaining the
21. issues she was experiencing and requesting that Wal-Mart permit her to work longer hours so that she could meet her deadlines. However, Johnson denied her request. As a result,
22. Ms. Owuor—who feared being written up for working too many overtime hours—was forced to work off the clock in order to meet her deadlines.
23. On or about October 2, 2019, Ms. Owuor was written up for working off the clock and failing to "manage workflow." In a meeting with Johnson and Wal-Mart's Human Resources
24. personnel, Ms. Owuor explained the issues she continued to experience when at-tempting
25. to pump at work, the impact those issues were having on her ability to meet dead-lines, and

-4-

Date Filed: October 21, 2021

Johnson's refusal to permit her to work longer hours. She also complained that she felt Wal-Mart had been discriminating against her since she returned from her pregnancy leave. Following this write up, Ms. Owuor did not work off the clock again. As a result, she did not meet her deadlines, and she was written up again on or about October 15, 2019. Ms. Owuor spoke with Johnson, again explaining to him that she was experiencing significant issues in pumping at work, and asking Johnson for help. However, Johnson refused to provide her any accommodations to address these issues.

In or around November 2019, the Store's managers began to store additional merchandise in the Office, making it more crowded and nearly impossible for Ms. Owuor to pump breast milk. At one point, Ms. Owuor tripped over a bicycle when trying to locate a seat to pump. On or about November 20, 2019, Ms. Owuor paged the Assistant Manager on duty, Alicia, asking that she be given access to the Office to pump. When Ms. Owuor arrived at the Office several minutes later, the door was locked, and she was forced to wait 20 minutes for another manager to open the door. When Ms. Owuor was finally given access to the Office, she saw that Alicia—who had clearly ignored her request—had been sitting inside the Office with the door locked. Alicia loudly sighed in annoyance before exiting the Office.

In or around early 2020, Ms. Owuor paged the Store's managers four different times in the morning asking that the Office be unlocked so that she could pump breast milk, but she was ignored each time. During her lunch break, Ms. Owuor paged her managers again, but she was again ignored and not provided access to the Office. Later that afternoon, she approached an Assistant Manager, Angelina, asking that the Office be unlocked so that she could pump breast milk. Angelina responded that she would unlock the Office in a few minutes and walked away. However, neither Angelina nor any other managers gave Ms. Owuor access to the Office and, unable to pump, she worked in pain all afternoon. When she arrived home that evening, her breasts were engorged.

On or about January 15, 2020, Ms. Owuor received a final written warning for working too many overtime hours. She again expressed to Johnson that she needed help, and that she could not keep up with her deadlines without working overtime hours because of the impediments Wal-Mart was imposing on her ability to pump breast milk. Under threat of termination, Ms. Owuor asked Johnson if she could take another position in the pharmacy department to accommodate her need to regularly pump breast milk and to address the significant stress that Wal-Mart was causing her. However, Johnson informed her that this was "not something we usually do in the company," stating that she would instead be placed on a "coaching plan."

Ms. Owuor Is Demoted from Her Pharmacy Manager Position

In or around February 2020, Johnson was replaced with a new Market Director, Mohammed Khan. Khan reviewed the "coaching plan" implemented by Johnson, and stated to Ms. Owuor that the plan and time frame therein unrealistic and unachievable. He then asked Ms. Owuor, "what really happened?" noting that she had no prior disciplinary actions until October 2019, when she suddenly began receiving multiple write ups. Ms. Owuor explained her continued issues pumping breast milk at work and her fear that she would be terminated as a result. Khan replied, "they will fire you," and stated that he was certain the unrealistic "coaching plan" would not work given Ms. Owuor's issues pumping breast milk at work.

In or around March 2020, Khan suggested that Ms. Owuor be demoted to a floater Pharmacist position at a Wal-Mart store located close to her home. Ms. Owuor—believing that this was the only way to save her job—informed Khan that she would be open to this

-5-

Date Filed: October 21, 2021

DFEH-ENF 80 RS

position. Khan directed her to send him an email requesting the demotion, and she was subsequently demoted from her Pharmacy Manager position. She was told that as a floater Pharmacist, she would be earning $4.00 less per hour than she earned in her Pharmacy Man-ager position, with a substantially decreased bonus potential, and that she would be working only 30 to 40 hours per week. She was not informed of any other changes to her pay or bene-fits.

In or around February 2021, Ms. Owuor noticed that Wal-Mart's system recorded her as having zero hours of paid time off ("PTO"). This was unusual, because Wal-Mart routinely provided all pharmacists 80 hours of PTO upfront on the first day of February each year, with an additional pay period accrual rate of up to a maximum of 168 hours for the year. Ms. Owuor brought the issue to Wal-Mart's attention and was initially told that it was due to a "code error." She then escalated the issue to Wal-Mart's Human Resources Manager, who informed her that Wal-Mart had applied a new PTO policy to Ms. Owuor when she was demoted from the Pharmacy Manager position, without informing her of this change.

This new PTO policy apparently applied to Ms. Owuor only: other staff and floater pharmacists notified her that they had received their 80 hours of upfront PTO that year; and two other Pharmacy Managers who had stepped down to floater positions informed Ms. Owuor that they had experienced the same issue, but that Wal-Mart's Human Resources department had immediately resolved the issue and granted them 80 hours of PTO.

As a result, Ms. Owuor was forced to cancel almost all of her formerly approved PTO days for the entire year. She has consequently missed a planned spring break vacation with her children, days off for family birthdays, and visits with her elderly parents. Moreover, because Ms. Owuor was not scheduled to work on her approved PTO days, she has been forced to ask her colleagues to take off so that she can cover their shifts, in order to avoid facing disciplinary action for not working on her formerly approved PTO days. She has also been required to use her sick time on days that she is unable to cover pharmacy shifts.

As a direct and proximate cause of Defendants' actions, Ms. Owuor has suffered and continues to suffer substantial losses in earnings, future earnings, bonuses, deferred compensation, and other employment benefits, and has suffered and continues to suffer the indignation of unlawful discrimination, the loss of her right to full and equal employment opportunities, as well as extreme emotional distress, mental anguish, frustration, anxiety, embarrassment among her friends and colleagues, and disruption of her personal life during a time when she was vulnerable.

Accordingly, Ms. Owuor brings this action seeking compensatory damages, punitive damages, attorneys' fees and costs, and other remedies as set forth below in amounts subject to proof at trial.

Complaint – DFEH No. 202110-15156421

Date Filed: October 21, 2021

DFEH-ENF 80 RS

1   VERIFICATION

2   I, **Margaret Wright**, am the **Attorney** in the above-entitled complaint. I have read the
3   foregoing complaint and know the contents thereof. The matters alleged are based
    on information and belief, which I believe to be true.
4

    On October 21, 2021, I declare under penalty of perjury under the laws of the State of
5   California that the foregoing is true and correct.

6

7                                                    **Los Angeles, CA**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Date Filed: October 21, 2021

DFEH-ENF 80 RS

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FILED |
|---|---|

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Julian Burns King (SBN: 298617); Margaret R. Wright (SBN: 312272)
KING & SIEGEL LLP
724 S. Spring Street, Suite 201, Los Angeles, CA 90014

  TELEPHONE NO.: (213) 465-4802    FAX NO. *(Optional):* (213) 465-4803
  ATTORNEY FOR *(Name):* Plaintiff Hellen Owuor

FILED
FOR COURT USE ONLY
Superior Court Of California,
Sacramento
10/25/2021
kjohnson12
By _____ , Deputy
Case Number:
34-2021-00310208

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**
  STREET ADDRESS: 720 9th Street
  MAILING ADDRESS: 720 9th Street
  CITY AND ZIP CODE: Sacramento, CA 95814
  BRANCH NAME: Gordon D, Scaber Courthouse

**CASE NAME:**
Owuor v Wal-Mart Associates, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000)   [ ] **Limited** (Amount demanded is $25,000) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
  [ ] Auto (22)
  [ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
  [ ] Asbestos (04)
  [ ] Product liability (24)
  [ ] Medical malpractice (45)
  [ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
  [ ] Business tort/unfair business practice (07)
  [ ] Civil rights (08)
  [ ] Defamation (13)
  [ ] Fraud (16)
  [ ] Intellectual property (19)
  [ ] Professional negligence (25)
  [ ] Other non-PI/PD/WD tort (35)
**Employment**
  [ ] Wrongful termination (36)
  [x] Other employment (15)

**Contract**
  [ ] Breach of contract/warranty (06)
  [ ] Rule 3.740 collections (09)
  [ ] Other collections (09)
  [ ] Insurance coverage (18)
  [ ] Other contract (37)
**Real Property**
  [ ] Eminent domain/Inverse condemnation (14)
  [ ] Wrongful eviction (33)
  [ ] Other real property (26)
**Unlawful Detainer**
  [ ] Commercial (31)
  [ ] Residential (32)
  [ ] Drugs (38)
**Judicial Review**
  [ ] Asset forfeiture (05)
  [ ] Petition re: arbitration award (11)
  [ ] Writ of mandate (02)
  [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
  [ ] Antitrust/Trade regulation (03)
  [ ] Construction defect (10)
  [ ] Mass tort (40)
  [ ] Securities litigation (28)
  [ ] Environmental/Toxic tort (30)
  [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
  [ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
  [ ] RICO (27)
  [ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
  [ ] Partnership and corporate governance (21)
  [ ] Other petition *(not specified above)* (43)

BY FAX

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [ ] Large number of separately represented parties
  b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
  c. [ ] Substantial amount of documentary evidence
  d. [ ] Large number of witnesses
  e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
  f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):* 8
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: October 22, 2021

Margaret R. Wright
_____
(TYPE OR PRINT NAME)

▶ *Margaret R. Wright*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

Page 1 of 2

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
**CIVIL CASE COVER SHEET**
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

For your protection and privacy, please press the Clear



**SUPERIOR COURT OF CALIFORNIA**

**County of Sacramento**
720 Ninth Street, Room 102
Sacramento, CA 95814-1311

For Court Use Only

PETITIONER/PLAINTIFF: Hellen Owuor

RESPONDENT/DEFENDANT: Wal-Mart Associates, Inc., et al.

**ORDER RE: DELAY IN SCHEDULING**
**INITIAL CASE MANAGEMENT CONFERENCE**

CASE NUMBER:.
34-2021-00310208

The Court finds good cause to delay the scheduling of the initial Case Management Conference for this case given the COVID-19 pandemic and its impact on court-wide operations. Among the affected operations is the Court's Case Management Program (CMP). The Court's CMP calendars have been and remain suspended until further notice. After the CMP Departments resume operations, the Court will schedule the initial Case Management Conference in this case and issue a Notice of Case Management Conference and Order to Appear.

The deadline for filing and service of the Case Management Conference Statements will be based upon the date for the initial Case Management Conference once it has been scheduled.

Parties shall continue to accomplish service of all parties named in the action.

Parties shall continue to ensure that all defendants and cross-defendants have answered, been dismissed, or had their defaults entered.

Plaintiff shall serve a copy of this order on any party to the complaint. The cross-complainant shall have the same obligation with respect to the cross-complaint

RICHARD K. SUEYOSHI

Dated: 10/25/2021

_____
Richard K. Sueyoshi, Judge of the Superior Court



# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SACRAMENTO
### SACRAMENTO, CALIFORNIA, 95814
### 916-874-5522
### WWW.SACCOURT.CA.GOV

## ALTERNATIVE DISPUTE RESOLUTION
## INFORMATION PACKAGE

Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the Superior Court of California, County of Sacramento (Sacramento County Superior Court), strongly encourages parties in civil cases to explore and pursue the use of Alternative Dispute Resolution.

### What is Alternative Dispute Resolution?

Alternative Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits. Types of ADR processes include:

- Arbitration
- Mediation
- Settlement Conferences

- Private judging
- Neutral evaluation

- Mini-trials
- Negotiation and *hybrids* of these processes

All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes. At the present time, the Sacramento County Superior Court offers Mediation and Arbitration.

### What are the advantages of using ADR?

ADR can have a number of advantages over traditional court litigation.

- **ADR can save time.** Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.

- **ADR can save money.** By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorneys fees and court expenses.)

- **ADR provides more participation.** Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.

- **ADR provides more control and flexibility.** Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.

- **ADR can reduce stress and provide greater satisfaction.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation. Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

### Arbitration and Mediation

Although there are many different types of ADR processes, the types most commonly used to resolve disputes in California state courts are Arbitration and Mediation. The Sacramento County Superior Court currently offers pre-screened panelists with experience and training in each of the following areas.

**Arbitration.** An Arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an Arbitration award. Arbitration awards may be entered as judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes. Arbitration can be binding if the parties so agree in writing. If there is no such agreement, either party can reject the Arbitration award and request a trial.


**Mediation.** Mediation is a voluntary, informal, confidential process in which the Mediator, a neutral third party, facilitates settlement negotiations. The Mediator improves communication by and among the parties, helps parties clarify facts, identify legal issues, explore options and arrive at a mutually acceptable resolution of the dispute.

Litigants are encouraged to use an ADR process as early in the case as circumstances permit. All appropriate cases will be reviewed for referral to ADR at the Case Management Conference(CMC).

### ADR Procedures for the Sacramento County Superior Court

Upon filing a complaint or cross-complaint, the plaintiff/cross-complainant must acquire this information package from the Court's Website, http://www.saccourt.ca.gov, or the Superior Court Clerk. Plaintiff is required to include the ADR Information Package when he or she serves the Complaint on the Defendant.

The court's ADR Panel List is available on-line at http://www.saccourt.ca.gov or may be obtained at the Civil Filing Counter at the Gordon D. Schaber Sacramento County Courthouse, 720 Ninth Street, Room 101, Sacramento, CA 95814.

**Mediation**.
All parties to the dispute may voluntarily agree to submit the case to a neutral Mediator, either through a court-appointment or through a private arrangement.  The parties may choose either of the following Mediation choices:

> **Private Mediation**.  Parties to a civil action agree to mediate their dispute with a Mediator of their choice without court assistance.  The cost of Mediation must be borne by the parties equally unless the parties agree otherwise.  Parties will be charged an amount as set by the Mediator (refer to the ADR Panel List for current rates).

> **Court Mediation**.  Upon stipulation of the parties, a Mediator and alternate Mediator will be selected from the court-approved list of neutrals (ADR Panel List). The court will confirm the selected Mediator and notice parties by mail.

> The Mediator is then responsible for contacting the parties to confirm a date, time, and place for Mediation.  Mediators on the court's approved ADR Panel List have agreed to provide up to three (3) hours of pro-bono Mediation.  In the event the Mediation extends beyond 3 hours and parties determine it would be beneficial to continue the Mediation process; the parties will independently be responsible for compensating the Mediator in an amount as set by the Mediator.

### UNLIMITED CIVIL CASES

- A *Stipulation and Order to Mediation – Unlimited Civil Cases,* Form CV\E-MED-179 *(see attached)* may be filed with the court at any time up to 15 calendar days prior to the Case Management Conference.

- If the parties do not stipulate to Mediation prior to their CMC, they may indicate their willingness to stipulate to Mediation at the CMC.  In that event, parties must submit a *Stipulation and Order to Mediation – Unlimited Civil Cases* within 14 calendar days after their CMC.

- A *Mediation Statement* must be filed with the *Case Management Statement*.

### LIMITED CIVIL CASES

- Parties may select and conduct voluntary Private Mediation without notification to the Court.

- Parties may stipulate to court mediation by filing a Stipulation and Order to Arbitration/Mediation - Limited Civil Cases form (CV\E-203) at any time after the filing of the Limited Civil Case Status Memorandum form (CV\E-202). This form is located on the court's website at http://www.saccourt.ca.gov. A Stipulation and Order to Arbitration/Mediation – Limited Civil Cases MUST be filed concurrently or subsequent to a Limited Civil Case Status Memorandum.



**Arbitration**
*UNLIMITED CIVIL CASES*
- Plaintiff may elect, the parties may stipulate, or the judge may Order the case to Arbitration. Parties will be asked to select an Arbitrator and three alternate Arbitrators from the court's ADR Panel List. The court will send a Notice of Appointment and an appropriate Order to Arbitration to all parties.

- Arbitrations are conducted pursuant to California Rules of Court, rules 3.810 through 3.830, and Local Rules Chapter 2, Part 5. Unless otherwise stipulated, an Award of Arbitrator is not binding upon the parties provided that they file a timely Request for Trial De Novo pursuant to California Rules of Court, rule 3.826. Upon the filing of a timely Request for Trial De Novo, the case will proceed to a Trial-Setting Conference. If no timely Request for Trial De Novo is filed, judgment based upon the Award of Arbitrator will be entered pursuant to California Rules of Court, rule 3.827.

LIMITED CIVIL CASES
Arbitration may occur in a limited civil case under the following circumstances:
- When all parties stipulate to arbitration pursuant to Code of Civil Procedure section 1141.12. A stipulation for arbitration shall be filed using the Court's local form, Stipulation and Order to Arbitration/Mediation – Limited Civil Cases form (CV\E-203). A Stipulation and Order to Arbitration/Mediation – Limited Civil Cases MUST be filed concurrently or subsequent to a Limited Civil Case Status Memorandum form (CV\E-202).

- When plaintiff elects to refer the case to judicial arbitration. A written election by the plaintiff to submit an action or proceeding to arbitration shall be filed using the Court's local form, Limited Civil Case Status Memorandum form (CV\E-202).

**Additional Information**
For additional information regarding the Court's ADR program, please go to the Court's website http://www.saccourt.ca.gov.

EXHIBIT B

1  Kara L. Jassy, Bar No. 198846
   kjassy@littler.com
2  LITTLER MENDELSON P.C.
   633 West 5th Street
3  63rd Floor
   Los Angeles, California 90071
4  Telephone:    213.443.4300
   Fax No.:      213.443.4299
5
   Dominique N. Thomas, Bar No. 231464
6  dnthomas@littler.com
   LITTLER MENDELSON P.C.
7  Treat Towers
   1255 Treat Boulevard
8  Suite 600
   Walnut Creek, California 94597
9  Telephone:    925.932.2468
   Fax No.:      925.946.9809
10
11 Attorneys for Defendant
   WAL-MART ASSOCIATES, INC.
12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                        COUNTY OF SACRAMENTO

15

16 HELLEN OWUOR, an individual,            Case No. 34-2021-00310208

17              Plaintiff,                 **DEFENDANT'S ANSWER TO**
                                           **PLAINTIFF'S COMPLAINT**
18       v.
                                           ASSIGNED FOR ALL PURPOSES TO
19 WAL-MART ASSOCIATES, INC., a Delaware   JUDGE GARRETT W. WOOD, DEPT. 31
   corporation; and DOES 1-10, inclusive,
20                                         Complaint Filed:   October 25, 2021
                Defendant.
21

22

23

24

25

26

27

28

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

1

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

COMES NOW Defendant WAL-MART ASSOCIATES, INC. ("Defendant") and hereby answers the Complaint ("Complaint") of Plaintiff HELLEN OWUOR ("Plaintiff"), without waiving its right to remove this action to federal court, as follows:

## GENERAL DENIAL

Defendant generally denies each and every allegation contained in Plaintiff's Complaint pursuant to § 431.30 of the California Code of Civil Procedure. Defendant further denies that Plaintiff has been damaged in the sums alleged, or at all.

## AFFIRMATIVE DEFENSES

Defendant further asserts the following affirmative defenses. By asserting these defenses, Defendant does not concede that it has the burden of proof as to any affirmative defense asserted below. Defendant does not presently know all the facts concerning the conduct alleged by Plaintiff sufficient to state all affirmative defenses at this time. Defendant will seek leave of this Court to amend this Answer should it later discover facts demonstrating the existence of additional affirmative defenses.

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action)

1. As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, fail to state facts sufficient to constitute a cause of action upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

### (Waiver)

2. As a separate and distinct affirmative defense, Defendant is informed and believes that further investigation and discovery will reveal, and on that basis alleges, that the Complaint and each cause of action set forth therein, or some of them, are barred, in whole or in part, by the equitable doctrine of waiver.

///

///

///

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

**THIRD AFFIRMATIVE DEFENSE**

**(Estoppel)**

3.     As a separate and distinct affirmative defense, Defendant is informed and believes that further investigation and discovery will reveal, and on that basis alleges, that the Complaint and each cause of action set forth therein, or some of them, are barred, in whole or in part, by the equitable doctrine of estoppel.

**FOURTH AFFIRMATIVE DEFENSE**

**(Laches)**

4.     As a separate and distinct affirmative defense, Defendant is informed and believes that further investigation and discovery will reveal, and on that basis alleges, that the Complaint and each cause of action set forth therein, or some of them, are barred by the equitable doctrine of laches.

**FIFTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

5.     As a separate and distinct affirmative defense, Defendant is informed and believes that further investigation and discovery will reveal, and on that basis alleges, that the Complaint and each cause of action set forth therein, or some of them, are barred, in whole or in part, by the equitable doctrine of unclean hands.

**SIXTH AFFIRMATIVE DEFENSE**

**(Consent)**

6.     As a separate and distinct affirmative defense, Defendant is informed and believes that further investigation and discovery will reveal, and on that basis alleges, that the Complaint and each cause of action set forth therein, or some of them, are barred, in whole or in part, by the equitable doctrine of consent.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Statutes of Limitations)**

7.     As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein are barred, in whole or in part, by the applicable statutes

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

3

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

of limitation including, without limitation, those set forth in California Government Code sections 12960 and 12965(b) and (d), and California Code of Civil Procedure sections 335.1, 338, 340 and/or 343.

### EIGHTH AFFIRMATIVE DEFENSE

### (Failure to Exhaust Administrative Remedies)

8.      As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein are barred, in whole or in part, because Plaintiff failed to exhaust her administrative remedies with the California Department of Fair Employment and Housing ("DFEH") and Equal Employment Opportunity Commission ("EEOC").

### NINTH AFFIRMATIVE DEFENSE

### (Claims Exceed Scope of Administrative Charge)

9.      As a separate and distinct affirmative defense, Defendant is informed and believes that the Complaint and each cause of action set forth therein, or some of them, are barred, in whole or in part, because, assuming *arguendo* that Plaintiff attempted to timely exhaust her administrative remedies with the DFEH and/or the EEOC, the causes of action asserted in the Complaint exceed the scope of any potential Charges filed with the DFEH and/or EEOC.

### TENTH AFFIRMATIVE DEFENSE

### (Managerial Privilege)

10.      As a separate and distinct affirmative defense, without admitting any of the acts, conduct, or statements attributed to Defendant in the Complaint, Defendant alleges that it took no action towards Plaintiff and any actions taken towards Plaintiff by Defendant are protected by the managerial privilege in that Defendant's actions with respect to Plaintiff's employment, which Plaintiff claims to be wrongful, were undertaken and exercised with proper managerial discretion in good faith, and for proper, lawful reasons based upon all relevant facts and circumstances known by Defendant at the time it acted, therefore barring Plaintiff from recovery in this action.

///

///

///

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

4

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

# ELEVENTH AFFIRMATIVE DEFENSE

## (Legitimate Business Reasons for Employment Decisions)

11. As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, are barred, in whole or in part, because the employment decisions about which Plaintiff complains were based upon legitimate, non-discriminatory and non-retaliatory business reasons.

# TWELFTH AFFIRMATIVE DEFENSE

## (Requisite Causal Connection)

12. As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal and, on that basis alleges, that the Complaint and each cause of action set forth therein, or some of them, cannot be maintained against Defendant because Plaintiff has failed to allege the requisite causal connection between the alleged protected activities and the alleged adverse employment action(s).

# THIRTEENTH AFFIRMATIVE DEFENSE

## (Business Necessity)

13. As a separate and distinct affirmative defense, Defendant alleges, without admitting Defendant engaged in any of the acts or omissions alleged in Plaintiff's Complaint, that any such acts or omissions were undertaken for business necessity and/or for lawful business reasons.

# FOURTEENTH AFFIRMATIVE DEFENSE

## (Defendant Acted in Good Faith and with Good Cause)

14. As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein cannot be maintained because good cause existed for each and every action taken by Defendant with respect to Plaintiff's employment and Defendant acted reasonably and in good faith, at all times, based upon all relevant facts and circumstances known by Defendant at the time it acted.

///

///

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Mixed-Motive)

15.     As a separate and distinct affirmative defense, Defendant alleges, without admitting that Defendant engaged in any of the acts or omissions alleged in Plaintiff's Complaint, that even if Plaintiff could establish that any of the allegations set forth in her Complaint were motivated by a potentially illegitimate motive based on Plaintiff's alleged disability or the exercise of her rights under the FEHA, that Defendant would have made the same decision and/or taken the same action even if it had not taken the alleged illegitimate motive into account.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (After-Acquired Evidence)

16.     As a separate and distinct affirmative defense, Defendant alleges that, to the extent Defendant acquires any evidence of wrongdoing by Plaintiff during the course of this litigation that would have materially affected the terms and conditions of Plaintiff's employment or would have resulted in Plaintiff being demoted, disciplined, and/or terminated, such after-acquired evidence shall bar Plaintiff's claims on liability or damages and shall reduce such claims as provided by law.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Plaintiff's Breach of Duties)

17.     As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, are barred, in whole or in part, by Plaintiff's own breach of duties owed to Defendant under California Labor Code sections 2853, 2854, 2856, 2857, 2858 and/or 2859.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Workers' Compensation Exclusivity and Preemption)

18.     As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein seeking damages for emotional and/or physical injury are preempted and barred by the exclusive remedy provisions of the California Workers' Compensation Act, California Labor Code section 3600, *et seq.,* and Section 132a of

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

the California Labor Code, in that: (1) the injuries complained of occurred when both Plaintiff and Defendant were subject to California Labor Code sections 3600-3601; (2) at the time of the alleged injuries, Plaintiff was performing services incidental to her employment and was acting within the course and scope of her employment; and (3) Plaintiff alleges that the injuries were caused by her employment, and accordingly, this Court lacks subject matter jurisdiction over said claims.

## NINETEENTH AFFIRMATIVE DEFENSE

### (At-Will Employment)

19. As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, cannot be maintained against Defendant because Plaintiff was an at-will employee at all times, with no entitlement to continued employment pursuant to Section 2922 of the California Labor Code.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Outside Course and Scope of Employment)

20. As a separate and distinct affirmative defense, Defendant alleges, without admitting that Defendant engaged in any of the acts or omissions alleged in Plaintiff's Complaint, that the Complaint and each cause of action set forth therein are barred, in whole or in part, because if Plaintiff suffered any injury (which Defendant denies), such injury was caused by the practices or instrumentalities of parties and/or unauthorized individuals who were not within the scope and exclusive control of Defendant, nor acting within the course and scope of their employment with Defendant.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Avoidable Consequences)

21. As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, are barred, in whole or in part, because: (a) Defendant exercised reasonable care to prevent and promptly correct any alleged discriminatory and/or retaliatory behavior, including, but not limited to, having in place appropriate policies and procedures which were communicated to Plaintiff; (b) Plaintiff

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

1    unreasonably failed to take advantage of any preventative or corrective opportunities provided by

2    Defendant or to otherwise avoid harm; and (c) Plaintiff's reasonable use of Defendant's policies

3    and procedures would have prevented at least some of the purported harm of which Plaintiff now

4    complains.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Offset)

7        22.    As a separate and distinct affirmative defense, Defendant alleges that any recovery

8    to which Plaintiff might otherwise be entitled must be offset by any unemployment benefits

9    and/or other monies and/or benefits Plaintiff has received or will receive.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

12       23.    As a separate and distinct affirmative defense, Defendant alleges that Plaintiff is

13   barred from obtaining any recovery against Defendant by reason of her failure to mitigate her

14   alleged damages, if any, or, alternatively, any damages or other relief awarded to Plaintiff must be

15   reduced or limited to the extent of such failure to mitigate.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Alleged Emotional Distress Caused by Outside Factors)

18       24.    As a separate and distinct affirmative defense, Defendant alleges that if Plaintiff

19   has suffered any emotional distress as alleged in her Complaint, such emotional distress was

20   proximately caused by factors other than Plaintiff's employment, the actions of Defendant, and/or

21   anyone acting on Defendant's behalf.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Inability to Perform Essential Functions of Job)

24       25.    As a separate and distinct affirmative defense, Defendant alleges that the

25   Complaint and each cause of action set forth therein, or some of them, are barred because to the

26   extent that the Court may find that Plaintiff does have a disability that limits a major life activity,

27   Plaintiff could not perform the essential functions of her job, with or without reasonable

28   accommodation.

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

## (No Reasonable Accommodation Existed)

26.     As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein is barred because, to the extent that the Court may find Plaintiff does have a disability that limits a major life activity and that Defendant had an obligation to reasonably accommodate such a disability, no reasonable accommodation existed which would have permitted Plaintiff to perform the essential functions of her position.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

## (Failure to Adequately Engage in the Interactive Process)

27.     As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, are barred because to the extent that the Court may find that Plaintiff does have a disability that limits a major life activity and that Defendant had an obligation to reasonable accommodate such a disability, Plaintiff failed to engage in the interactive process reasonably and in good faith.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

## (Undue Hardship)

28.     As a separate and distinct affirmative defense, Defendant alleges that the Complaint and each cause of action set forth therein, or some of them, are barred because, to the extent that the Court may find that Plaintiff does have a disability that limits a major life activity and that Defendant had an obligation to reasonably accommodate such a disability, any accommodation of Plaintiff's alleged disability would have imposed an undue hardship on Defendant.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

## (Health/Safety Defense)

29.     As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation will reveal, and on that basis alleges, that the Complaint and each cause of action set forth therein are barred in whole or in part because to the extent that the Court may find the Plaintiff does have a disability that limits a major life activity and that Defendant had an obligation to reasonable accommodate such a disability, Plaintiff, even

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

with reasonable accommodation, was unable to perform the essential duties of Plaintiff's former position and/or to perform those duties in a manner that would not endanger Plaintiff's health or safety.

## THIRTIETH AFFIRMATIVE DEFENSE

## (Bona Fide Occupational Qualifications)

30.     As a separate and distinct affirmative defense, Defendant is informed and believes, and on that basis alleges, that its conduct towards Plaintiff was fully justified based upon its judgment of differences in individual performance, qualifications, skill, effort, responsibility, merit, or other *bona fide* occupational qualifications.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

## (Punitive Damages Unconstitutional)

31.     As a separate and distinct affirmative defense, Defendant alleges that Plaintiff is not entitled to recover punitive damages because the imposition of such damages violates the United Statesand California Constitutions, in that: (1) such damages are so punitive in purpose and effect as to constitute a criminal penalty, entitling Defendant to rights to be given to Defendants in criminal proceedings under the United States and California Constitutions; (2) such damages constitute an impermissible restriction on speech and a violation of the First Amendment of the United States Constitution; (3) the imposition of such damages would violate Defendant's rights to due process and/or equal protection under the law, under the United States and California Constitutions; and/or (4) the California punitive damages statute is unconstitutional in that it imposes an undue burden on interstate commerce.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

## (No Knowledge Justifying Punitive Damages)

32.     As a separate and distinct affirmative defense, Defendant alleges that without admitting to any of the acts, conduct or statements attributed to it by Plaintiff's Complaint, Plaintiff's claims for punitive damages are barred because the acts, conduct or statements contained in Plaintiff's Complaint were not taken with the advance knowledge, conscious disregard, authorization, ratification or act of oppression, fraud or malice on the part of an officer,

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

director or managing agent of the corporation.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

**(No Entitlement to Prejudgment Interest)**

33.    As a separate and distinct affirmative defense, Defendant alleges that the Complaint fails to state a claim upon which prejudgment interest may be granted because the damages claimed are not sufficiently certain to allow an award of prejudgment interest.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

**(Damages Too Speculative)**

34.    As a separate and distinct affirmative defense, Defendant is informed and believes that further investigation will reveal, and on that basis alleges, that the Complaint and each cause of action set forth therein, or some of them, are barred because the damages Plaintiff alleges in her Complaint, if any, are too speculative to be recoverable at all.

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

**(No Private Right of Action)**

35.    As a separate and distinct affirmative defense, Defendant alleges that Plaintiff's fourth cause of action, alleging Defendant failed to provide break time and a compliant location to express breast milk under California Labor Code §§ 1030-1034, is barred because there is no private right of action under said provisions of the Labor Code.

**THIRTY-SIXTH AFFIRMATIVE DEFENSE**

**(Provided Adequate/Space and Time to Express Breast Milk)**

36.    As a separate and distinct affirmative defense, Defendant alleges Plaintiff was provided with adequate facilities and time, in compliance with the relevant law at the time, to breastfeed her infant child or express milk in compliance with California Labor Code §§ 1030-1034. This includes, but is not limited to, reasonable break time to express breast milk, a private location other than a bathroom in close proximity to Plaintiff's work area, which is clean and safe, free of hazardous materials, contains a clean surface, a place to sit, and has access to electricity, and a sink and refrigerator in close proximity to Plaintiff's work location.

///

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

# THIRTY-SEVENTH AFFIRMATIVE DEFENSE

## (Additional Affirmative Defenses)

37.     Defendant expressly reserves the right to assert additional defenses or claims which may become known during the course of discovery.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant prays for judgment from this Court as follows:

1.     The Complaint be dismissed in its entirety with prejudice;

2.     Plaintiff take nothing by way of her Complaint;

3.     Defendant be awarded judgment in its favor and against Plaintiff;

4.     Defendant recovers its costs of suit incurred herein; and

5.     The Court grants Defendant such other and further relief as it deems proper.

Dated: December 3, 2021

LITTLER MENDELSON P.C.

Kara L. Jassy
Dominique N. Thomas
Attorneys for Defendant
WAL-MART ASSOCIATES, INC.,

LITTLER MENDELSON P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

**PROOF OF SERVICE**

I am employed in  County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is Treat Towers, 1255 Treat Boulevard, Suite 600, Walnut Creek, California  94597.  On this 3rd day of December, 2021, I served a copy of the within document(s):

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**

☒ by placing a true copy of the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Walnut Creek, California addressed as set forth below.

☐ by depositing a true copy of the same enclosed in a sealed envelope, with delivery fees provided for, in an overnight delivery service pick up box or office designated for overnight delivery, and addressed as set forth below.

☒ by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses on the attached service list on the dates and at the times stated thereon. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful. The electronic notification address of the person making the service is grose@littler.com.

**Julian Burns King**                    **Attorneys for Plaintiff**
**Margaret R. Wright**                  **HELLEN OWUOR**
**KING & SIEGEL LLP**
**724 S Spring Street, Suite 201**
**Los Angeles, CA  900214**
**Email:  julian@kingsiegel.com**
          **margaret@kingsiegel.com**

I am readily familiar with the firm's practice of collection and processing correspondence for mailing and for shipping via overnight delivery service.  Under that practice it would be deposited with the U.S. Postal Service or if an overnight delivery service shipment, deposited in an overnight delivery service pick-up box or office on the same day with postage or fees thereon fully prepaid in the ordinary course of business.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  Executed on December 3, 2021.

_____
G. M. Rose

4866-8084-4804.2 / 080000-4224

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT